IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE GRAPHICS PROCESSING UNITS ANTITRUST LITIGATION _____ / This Document Relates to: All Actions. _____ / | No. C 07-01826 WHA<br><br>MDL No. 1826<br><br>**PRETRIAL ORDER NO. 3C**<br><br>**FINAL ORDER APPOINTING INTERIM COUNSEL FOR PUTATIVE CLASSES** |

In this recently designated, multi-district proceeding involving allegations of price-fixing in the sale and marketing of graphics processing chips, three motions are now before the Court seeking appointment as interim counsel for the putative classes. Two of the motions are on behalf of *direct* purchasers of the chips and one is on behalf of *indirect* purchasers. Currently, there are 21 indirect-purchaser actions associated with this multi-district litigation. An additional 24 indirect-purchaser actions have been transferred by the Judicial Panel on Multi-District Litigation. There are five direct-purchaser actions associated with this multi-district litigation with one additional action having recently been transferred. Plaintiffs are represented by several dozen different attorneys.

The concept of "interim counsel to act on behalf of the putative class" was added to Rule 23 in 2003. It is a permissive option. Under Rule 23(g)(2)(A), a district court "may," but is not required, to "designate interim counsel to act on behalf of the putative class before

determining whether to certify the action as a class action." The role of interim counsel is set forth in the Advisory Committee's Note:

> Paragraph (2)(A) authorizes the court to designate interim counsel during the pre-certification period if necessary to protect the interests of the putative class. * * * Before the class certification, however, it will usually be important for an attorney to take action to prepare for the certification decision. The amendment to Rule 23(c)(1) recognizes that some discovery is often necessary for that determination. It also may be important to make or respond to motions before certification. Settlement may be discussed before certification. Ordinarily, such work is handled by the lawyer who filed the action. In some cases, however, there may be rivalry or uncertainty that makes formal designation of interim counsel appropriate. Rule 23(g)(2)(A) authorizes the court to designate interim counsel to act on behalf of the putative class before the certification decision is made.

*See also Manual For Complex Litigation*, Fourth Ed. § 1211 at 246–47 (2004).

With respect to direct purchasers, one pending motion proposes a group of three law firms. They are Kaplan, Fox & Kilsheimer LLP ("KFK"), Spector, Roseman & Kodroff, P.C. ("SRK"), and Saveri & Saveri, Inc. ("Saveri"), the latter to be "interim liaison counsel." The other direct-purchaser motion proposes Boies, Schiller & Flexner LLP ("BSF") as interim counsel.

The threshold question is whether we even need interim counsel. At least one court has declined to appoint interim counsel. *In re Issuer Plaintiff Initial Pub. Offering Antitrust Litig.*, 234 F.R.D. 67, 70 (S.D.N.Y.) (Judge McKenna). On the present record, however, this order finds that there is a need for interim counsel, at least to the extent designated below. The basic reason is that serious issues concerning the adequacy of the pleadings and the availability of discovery/disclosures will plainly arise, among other reasons, well before we reach the stage of class certification. It is important to streamline the balkanized line-up of many counsel and to make sure that the responsibility to fully represent the putative class(es) does not fall between the cracks. True, this role could conceivably be served by "liaison" or "coordinating" counsel. But the above-quoted description by the Advisory Committee of the role of interim counsel seems most apt to the needs of the present set of coordinated actions.

\*      \*      \*

Although the rule is silent as to the criteria for selecting interim counsel for the putative class, this order will borrow the criteria specified in Rule 23(g) for selecting class counsel. The first factor is "the work counsel has done in identifying or investigating potential claims in the action." It appears to the Court that all of the applicants have relied primarily, if not exclusively, on the fact of the pendency of an antitrust investigation by the Department of Justice. All of the actions were commenced in the wake of the public announcements by defendants of their receipt of DOJ document subpoenas. The complaints rely on no additional work (such as interviews with confidential witnesses) beyond what would be readily available from public sources and consumers. Nor do the interim-counsel motions and declarations reveal any investigative work, under seal or otherwise, with the sole exception that each movant has hired an economics consultant. So this factor does not separate any one applicant from the others.

At the hearing on these motions, all applicants were heard, some several times. All applicants were asked to submit supplemental information, including declarations under seal summarizing any investigative work done to date. All submissions have now been evaluated and the above observation remains true.

The next factor is "counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action." The applicant law firms all have excellent track records. The applications, however, uniformly gloss over a key issue, namely the identity of the lead lawyer or top two lawyers in each firm who will be dedicated to the case as opposed to merely appearing on the pleadings and making occasional visits into the case. Thus, each application showcases a fabled lawyer. But no application promises anything concerning how involved any such star will actually be in the day-to-day management and work of the case. For example, we are told that "Robert Kaplan, Gregory Aronson and Gary Specks of KFK will participate . . . in this case" (Br. 7). Participation could be a lot or a little. For all we are told, the star attraction may be so consumed with other litigation as to make only cameo appearances in our case. At the hearing, counsel were given an opportunity to clarify. The Court is convinced that the individual lawyer appointed herein will devote a large

3

percentage of his own time to this case although, of course, some projects may be delegated within the individual interim counsel's firm to those qualified to perform the project.

The next factor is "counsel's knowledge of the applicable law." All of the applicants are well-versed in federal antitrust law. Again, this factor does not separate any one applicant from the rest.

The next factor is "the resources counsel will commit to representing the class." BSF has more lawyers than the rival groups combined and certainly more than any individual firm within the rival groups.

Rule 23(g)(1)(C)(ii) further allows the court to "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." In this connection, the Advisory Committee Note states:

> In many instances, the applicant will be an individual attorney. In other cases, however, an entire firm, or perhaps numerous attorneys who are not otherwise affiliated but are collaborating on the action will apply. No rule of thumb exists to determine when such arrangements are appropriate; the court should be alert to the need for adequate staffing of the case, but also to the risk of overstaffing or an ungainly counsel structure.

Based on the undersigned's eight years on the bench and preceding 25 years as a trial attorney, the Court has found that a single firm will usually provide more effective and more efficient representation than a conglomerate of separate firms. The reason is that the single firm is already organized with internal levels of communication, already has a command and management structure and already has tried-and-tested teamwork habits. By contrast, a conglomerate of separate firms must invent, establish and maintain a command and management structure and forge new teamwork habits together with lines of communication. Having one lead responsible counsel is, in the Court's judgment, better calculated to achieve success than having multiple leaders, each of whom may expect the other to carry out a task. A conglomerate increases the risk of items falling through the cracks. As the Advisory Committee Note warns, moreover, such combinations pose "the risk of overstaffing" and make for "an ungainly counsel structure."

4

On the other hand, if we always limit appointment to single firms, smaller boutique firms with excellent counsel may go unemployed, at least where they refuse (or are unable) to carry the full load. This would be an institutional loss of talent to our system. Consequently, a court should not automatically disqualify a conglomeration as counsel. Nonetheless, the Court cannot ignore the lessons of experience and will factor in a preference for a single excellent firm.

On the present record, that preference militates in favor of the selection of BSF as interim counsel for the nationwide putative class of direct purchasers, all other factors being more or less equal. Contrary to some of the applications, Rule 23(g)(2) does *not* require that the applicant "best" able to represent the interests of the class be chosen as interim counsel, at least not expressly. That language applies, at least expressly, only to the selection of ultimate class counsel. Here, we are only concerned with interim counsel. It is very hard at this early stage to say who is "best." Nonetheless, this order finds that the appointments made herein will advance the interests of the class at least as well, if not better, than any other appointment.[*]

Consequently, this order appoints William Isaacson and his firm Boies, Schiller & Flexner LLP as interim counsel for the putative nationwide class of direct purchasers. Interim counsel shall have all of the responsibilities set forth below. There is no need for an executive committee.

\*   \*   \*

With respect to the indirect purchasers (such as end consumers who bought through others), the problem is more complicated. Although a federal claim is theoretically possible for indirect purchasers under the pass-on exception to *Illinois Brick v. Illinois*, 431 U.S. 720 (1984), such federal claims in actual practice rarely succeed and no such claim is presented. The only federal claim is for injunctive relief. The *state* damages claims have more traction for indirect purchasers seeking any recovery. In this MDL proceeding, there are also 21 indirect-purchaser cases with claims under state law. An additional 24 cases with claims under state law will soon

---

[*] The Court inquired whether any counsel wished to offer an attractive fee proposal, which Rule 23(g) now expressly invites, but all declined, citing the lack of information at this early stage to evaluate the case.

5

join them. Although state claims usually proceed on a state-class-by-state-class basis, there is some authority for a nationwide class under California law.

To streamline the roles of counsel, this order appoints Michael Lehmann and his firm Furth Lehmann LLP as interim counsel for the putative nationwide class of indirect purchasers for *all* claims — as to all federal and state claims. The Court has wrestled with the problem of trying to identify the appropriate classes for indirect purchasers. To appoint interim counsel for each state would be unworkable. To break them into federal versus state claims would mean that two different counsel would be speaking for the same person, *e.g.*, a California resident would have one attorney on the state claims and yet another attorney on the federal claims. Frankly, it is too early in the case for the Court to assess which grouping makes sense. It is best, for now, to put one lawyer in charge of the entire group of indirect purchasers, subject to adjustment later.

It is true that the Furth firm proposed itself originally as part of a four-firm conglomerate. For the reasons stated above, however, the Court finds each putative class would be better served by an appointment of a single firm, subject to the following caveat. Mr. Lehmann seems slightly more dedicated to the case than any other candidate. If Attorney Lehmann concludes that he would have an irreconcilable conflict, even as interim counsel, he may recommend to the Court an appropriate division of the putative indirect purchaser class along with, as to each post, two separate candidates to serve as interim counsel and explanations of the relative merits of the two competing applications, one of whom the Court will then select, without prejudice to anyone else applying for the post. There is no need for an executive committee.

\*       \*       \*

All interim counsel shall have the following responsibilities:

1. To investigate the claims, including interviews of witnesses and collection of evidence and retention of consultants and investigators;

2. To brief and argue issues relating to a stay of discovery/disclosures and to conduct all necessary discovery as allowed;

3. To prepare and file a consolidated amended complaint, including formulation of the pleading strategies;

6

     4.     To brief and to argue the motion to dismiss;

     5.     To prepare and to argue the motion for class certification and to recommend at least one *other* counsel for each class and subclass, all without prejudice to other motions and proposed representations;

     6.     To negotiate with defense and other counsel with respect to potential settlement and other matters after adequate due diligence;

     7.     To consult, as necessary in the best interests of the putative class, with all other plaintiffs' counsel to obtain their input concerning strategy and to be the primary spokesperson for the putative class;

     8.     To act as interim counsel in any appeal prior to the appointment of class counsel; and

     9.     To advance and protect the interests of the putative class in all respects and to honor all of its responsibilities, including making sure that all representations and commitments made on its behalf are honored.

All compensable work on behalf of any putative class shall be done by interim counsel except in those instances wherein the named interim counsel concludes in good faith that efficiency and effectiveness *clearly* warrant delegation of a task to another firm selected by the named interim counsel who shall be deemed as well to be interim counsel to the extent of such delegation. When any such work is delegated, appointed named interim counsel must prepare a contemporaneous memorandum to file justifying why the delegation met the above criteria. All work done by any counsel, consultants and investigators on behalf of any putative class must be documented in contemporaneous time notes stating the timekeeper, the date, time employed, the project and a description of the work. With respect to the latter, an entry such as "review financial statements to prepare for X deposition" would be adequate but "review documents" would not be. Interim counsel shall submit to the Court under seal on the third Monday after the close of each quarter a summary of all time and projects performed by interim counsel (including delegated projects) identifying the names and firms of the individual attorneys

doing the work and shall provide all memos justifying delegation of any work on behalf of the putative class.

Any commitments and agreements with defense counsel and/or the Court made by any interim counsel (including interim counsel by way of a delegation), must be honored by and will be binding on the putative class.

All other counsel representing any putative class member shall have the right, upon request, to review (without copying) all investigative and other work-product materials assembled by interim counsel. This is so that other counsel may evaluate the case and make appropriate bids for the job of class counsel (as well as to protect their own clients). Such other counsel must, however, maintain the confidentiality of any privileged information made available to them. All work product by interim counsel and their investigators must be provided to class counsel in the event different counsel is selected for that position. Except as expressly authorized herein, interim counsel may have no other arrangements or agreements concerning distribution of work herein or attorney fees or costs.

The appointments above shall become effective upon the filing of a certificate by said counsel accepting the terms of the appointment, which shall be filed within **SEVEN CALENDAR DAYS** of the date of this order. This order finds that the following appointments will best protect the interests of putative class members. The foregoing appointments are without prejudice to a fresh examination of who should be class counsel if and when class(es) are certified.

**IT IS SO ORDERED.**

Dated: June 4, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8